JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

JOHN P. TUSTIN, Trial Attorney
SEAN C. DUFFY, Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Phone:    (202) 305-3022 (Tustin)
              (202) 305-0445 (Duffy)
Fax:       (202) 305-0506

KURT G. ALME
United States Attorney

*Attorneys for Federal Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | | |
|---|---|---|
| GALLATIN WILDLIFE ASSOCIATION, *et al.* | ) ) | Case No. 2:15-cv-00027-BU-BMM |
| Plaintiffs, | ) ) | FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO |
| v. | ) ) | PLAINTIFFS' MOTION FOR INJUNCTION PENDING |
| UNITED STATES FOREST SERVICE, *et al.*, | ) ) | APPEAL [ECF No. 178] |
| Defendants. | ) ) | |
| | ) | |

## **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................1

II.    STATUS OF THE PROJECT ................................................................2

       A.    The Court denied Plaintiffs' motion for a preliminary injunction. .......2

       B.    The Court granted in part USFS's cross-motion for summary
             judgment and ordered a partial administrative remand. ......................4

       C.    USFS is complying with the Court's order. .........................................5

III.   LEGAL STANDARD ...........................................................................8

IV.    ARGUMENT .......................................................................................10

       A.    Plaintiffs may not seek an injunction pending appeal absent a
             ruling that denies the request for injunctive relief in their
             summary judgment motion. ................................................................10

       B.    Plaintiffs have not demonstrated a likelihood of success on the
             merits. .................................................................................................11

       C.    Plaintiffs have not demonstrated irreparable injury ...........................12

             1.    Plaintiffs have not shown irreparable harm to bighorn
                   sheep. ........................................................................................13

             2.    Plaintiffs have not shown irreparable harm to grizzly
                   bears. .........................................................................................16

             3.    Plaintiffs have not shown irreparable harm to their
                   members. ...................................................................................19

       D.    The public interest and balance of harms do not favor an
             injunction. ...........................................................................................21

       E.    Plaintiffs should post a bond. .............................................................24

V.     CONCLUSION ....................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aberdeen & Rockfish R.R. Co. v. SCRAP*,
409 U.S. 1207 (1972) ................................................9

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011)......................................... 13, 19, 20, 21

*All. for the Wild Rockies v. Krueger*,
35 F. Supp.3d 1259 (D. Mont. 2014) ........................................... 20, 23

*Camp v. Pitts*,
411 U.S. 138 (1973) ................................................17

*Caribbean Marine Servs. Co. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988)..............................................13

*Earth Island Inst. v. Carlton*,
626 F.3d 462 (9th Cir. 2010)...................................... 9, 12, 22

*Gallatin Wildlife Ass'n v. USFS*,
No. 2:15-cv-27-BU-BMM,
2016 WL 6684197 (D. Mont. Apr. 7, 2016) ......................... 13, 14, 18

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015)..............................................12

*Hilton v. Braunskill*,
481 U.S. 770 (1987) ................................................9

*Lands Council v. McNair*,
537 F.3d 981 (9th Cir. 2008)..................................... 9, 19, 21

*McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*,
686 F.2d 731 (9th Cir. 1982)..............................................10

*Native Ecosystems Council & All. for the Wild Rockies v. USFS ex rel. Davey*,
No. 11-cv-00212-CWD, 2011 WL 4015662 (D. Idaho Sept. 9, 2011)................20

*Native Ecosystems Council v. Marten*,
No. CV 13-64-M-BMM, 2017 WL 2457886 (D. Mont. June 6, 2017) ..............12

*Sierra Forest Legacy v. Rey*,
691 F. Supp. 2d 1204 (E.D. Cal. 2010).................................10

*Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200*,
611 F.3d 483 (9th Cir. 2010) .................................................................13

*Tribal Vill. of Akutan v. Hodel*,
859 F.2d 662 (9th Cir. 1988) ...................................................................8

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) ...............................................................................21

*Winter v. Nat. Res. Def. Council*,
555 U.S. 7 (2008) ........................................................................ 9, 13, 21

*Yakus v. United States*,
321 U.S. 414 (1944) ...............................................................................21

## Statutes

16 U.S.C. § 1604(e)(1)............................................................................21

## Rules

Fed. R. Civ. P. Rule 62(c) ............................................................ 8, 10, 24

## Regulations

36 C.F.R. § 219.56(a)................................................................................8

36 C.F.R. § 219.57(b) ...............................................................................8

81 Fed. Reg. 51,179 (Aug. 3, 2016).........................................................6

81 Fed. Reg. 79,019 (Nov. 10, 2016)........................................................6

82 Fed. Reg. 30,502 (June 30, 2017) ......................................................17

## Other Authorities

11 CHARLES ALAN WRIGHT, *ET AL.*, FEDERAL PRACTICE AND PROCEDURE § 2904 (3d
ed. 2015) ...............................................................................................10

# I. __INTRODUCTION__

Plaintiffs Gallatin Wildlife Association and Yellowstone Buffalo Foundation move for their fifth injunction in less than three years to stop domestic sheep grazing on National Forest Service system land in the Gravelly Mountains. Since this Court considered Plaintiffs' first request for an injunction in the summer of 2015, only three things have changed, all of which favor denying Plaintiffs' latest request to halt grazing. First, the Forest Service is complying with the Court's order on the parties' cross-motions for summary judgment. The New Information Review and Determination is complete, and the Forest Service issued a final supplemental Environmental Impact Statement and draft Record of Decision for the Forest Plan. Second, the Fish and Wildlife Service delisted the Greater Yellowstone grizzly bear population from the endangered species list because that population met its recovery goals. Third, the Montana Fish and Game Commission is considering a proposal to begin hunter-harvest of the Greenhorn Mountain bighorn sheep herd this fall because the population meets state criteria for regulated harvest.

There have not been any known removals or die-offs of the Greenhorn Mountain bighorn sheep herd due to commingling or potential contact with domestic sheep on Forest Service allotments on the Gravelly Mountains. Nor have there been any reported grizzly bear mortalities. Domestic sheep grazing continues

to be an important component of the Forest Service's multiple-use mandate. As the permittees and industry groups have previously attested, grazing on the allotments contributes to the local economy and culture, and has taken place for generations.

The Court should deny Plaintiffs' motion for an injunction pending appeal. First, Plaintiffs' motion is premature because the Court has not ruled on their request for injunctive relief. Second, even if Plaintiffs could seek an injunction pending appeal, they have failed to establish any of the elements necessary to obtain the extraordinary relief they seek. Plaintiffs fail to establish a likelihood of success on the merits of their National Environmental Policy Act ("NEPA") claims. Plaintiffs fail to show that bighorn sheep, grizzly bears, or their members are likely to suffer irreparable harm if grazing is authorized in 2018. Finally, the balance of equities and public interest favor denial of the request to enjoin domestic sheep grazing.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

## A.     The Court denied Plaintiffs' motion for a preliminary injunction.

Plaintiffs moved for a preliminary injunction in June 2015 to prohibit domestic sheep grazing on the Cottonwood and Fossil-Hellroaring domestic sheep grazing allotments, two of the seven allotments managed by the U.S. Forest Service ("USFS") in the Gravelly Mountains on the Beaverhead-Deerlodge

National Forest.  *See* Mem. in Supp. of Pls.' Mot. for Prelim. Inj., ECF No. 4

("Pls.' PI Mem.").  Plaintiffs contended that absent a preliminary injunction, their

members, bighorn sheep, and grizzly bears would suffer irreparable harm.  *Id.* at

31-38.  The Court denied the motion because it concluded that Plaintiffs failed to

demonstrate a likelihood of irreparable harm, a likelihood of success on the merits,

or the existence of serious questions going to the merits.  Am. Mem. in Supp. of

Order Denying Pls.' Mot. for Prelim. Inj. 25, ECF No. 56 ("PI Order").  Plaintiffs

then appealed that order and moved for an injunction pending appeal, which the

Court denied.  *See* Aug. 4, 2015 Order, ECF No. 61.  Plaintiffs did not make any

new arguments in favor of a preliminary injunction.  *Id.*  The Ninth Circuit denied

Plaintiffs' emergency motion for injunctive relief.  Order, *Gallatin Wildlife Ass'n*

*v. USFS,* No. 15-35576 (9th Cir. July 17, 2015), Dkt. No. 11.  Plaintiffs later

dismissed their appeal.

        In its ruling on Plaintiffs' motion for a preliminary injunction, the Court

found that Plaintiffs failed to explain how permitting grazing in a particular year

would make the risk of disease transmission more likely when it has not occurred

historically or prevented the bighorn herd from growing.  *See* PI Order 7-9.  The

Court noted that domestic sheep have grazed on the Gravelly landscape since the

1860s, that a distance of between six and seventeen miles separates the bighorn

sheep from the Cottonwood allotments, and that since reintroduction there have

*Fed. Defs.' Resp. in Opp'n*                                                    3

been no removals of bighorn sheep, die-offs, or commingling of species on the allotments. *Id.* The Court also found that Plaintiffs failed to explain how grazing in a particular year causes grizzly bears to suffer irreparable harm by displacing the bears and restricting access to a wildlife corridor, given the long history of grazing and the history of not using lime on domestic sheep carcasses. *See id.* at 9-10. Finally, with respect to Plaintiffs' members aesthetic and recreational interests, the Court found that Plaintiffs failed to show how permitting grazing would cause any new harm to the landscape that has not already occurred in the past 150 years. *Id.* For these reasons, the Court concluded that Plaintiffs failed to demonstrate that irreparable harm would occur to Plaintiffs' members, bighorn sheep, or grizzly bears if grazing were permitted to continue in 2015. *Id.* at 5-10.

**B.** **The Court granted in part USFS's cross-motion for summary judgment and ordered a partial administrative remand.**

The Court granted Federal Defendants' motion for summary judgment in part, concluding that USFS adequately provided for bighorn sheep viability in the Forest Plan, fully considered materials relevant to bighorn sheep viability, and adequately explained its basis for using the coarse filter methodology to ensure bighorn sheep viability, and thus complied with NEPA. June 14, 2016 Order 15, ECF No. 148 ("Order on SJ Mots."). The Court concluded, however, that USFS fell short of NEPA's requirement that it take a "hard look" at the effects of the 2002 and 2008 Memorandums of Understanding ("MOUs") and that it failed to

*Fed. Defs.' Resp. in Opp'n*                                                    4

evaluate whether new developments pertaining to bighorn sheep required it to conduct supplemental NEPA analysis on the allotment management plans for domestic sheep. *Id.* at 16-34.

In their summary judgment papers, Plaintiffs repeated their request for the Court to permanently enjoin domestic sheep grazing on the Gravelly Mountain allotments. Br. in Supp. of Pls.' Mot. for Summ. J. 21-28, ECF No. 115 ("Pls. SJ Mot."). But the Court declined to enjoin domestic sheep grazing and instead deferred a decision whether to permanently enjoin grazing until USFS resolved the deficiencies in the environmental analysis that the Court identified. Order on SJ Mots. 36. To resolve those deficiencies, the Court ordered USFS to "issue a supplemental [environmental impact statement ("EIS")] for the 2009 Revised Forest Plan that evaluates the potential environmental consequences of the [2002] MOU and the 2008 MOU." *Id.* 37, ¶ 2. In addition, the Court ordered USFS to review five issues Plaintiffs had identified with respect to bighorn sheep, as well as "any other pertinent new information, to determine whether any, or all, of this new information warrants supplementation of the original EIS." *Id.* ¶ 3.

## C.   <u>USFS is complying with the Court's order.</u>

Pursuant to the order on the cross-motions for summary judgment, USFS commenced an analysis of information pertaining to bighorn sheep ("New Information Review and Determination") and commenced a supplemental EIS for

the MOUs, in coordination with Montana Fish, Wildlife, and Parks ("Montana

FWP").  At the time it endeavored to undertake these analyses, USFS anticipated

that the final New Information Review and Determination would be issued in late

February 2017 and that the final Record of Decision on the supplemental EIS

would be issued in September or October 2017.  ECF Nos. 149, 152.

USFS provided a draft New Information Review and Determination to the

interested public (including Plaintiffs) on January 13, 2017.  Fourth Declaration of

Jan M. Bowey ("Bowey Decl."), ¶ 4 and Ex. 1 at 3; Declaration of Sean C. Duffy

("Duffy Decl."), ¶ 3 and Ex. 2.  USFS received 253 comments on this draft

document, including 109 comments from Plaintiffs.   Bowey Decl. ¶ 4.  USFS

published a Notice of Intent to prepare a supplemental EIS in the Federal Register

on August 3, 2016.  81 Fed. Reg. 51,179 (Aug. 3, 2016).  In accordance with the

Court's order, the supplemental EIS would evaluate the potential environmental

consequences of the MOUs associated with proposed reintroduction of bighorn

sheep in the Greenhorn Mountains.  USFS published a Notice of Availability of the

draft supplemental EIS in the Federal Register on November 10, 2016.  81 Fed.

Reg. 79,019 (Nov. 10, 2016); Duffy Decl. ¶ 2 and Ex. 1.  USFS received 118

comments on the draft supplemental EIS, including 8 comments from Plaintiffs.

Bowey Decl. ¶ 6.

USFS issued both the New Information Review and Determination and final

supplemental EIS later than originally estimated.  This delay was due to several

factors.  First, the USFS received comments that were more diverse and complex,

and in a greater volume, than anticipated.  Bowey Decl. ¶ 9(a).  Combined, the two

analyses received more than 200 pages of comments from the public.  The

comments included references to more than sixty articles in the scientific literature,

which USFS reviewed and responded to prior to preparing the final analyses.  *Id.*

Second, the 2017 fire season in Montana and the Northern Rockies was extreme.

Last year, fifty-six wildfires burned more than 49,000 acres of National Forest

System lands on the Beaverhead-Deerlodge National Forest alone.  *Id.* ¶ 9(b).

From July 9 to September 22, 2017, National Fire Preparedness Levels were at a

level 4 or higher (on a scale of 1 to 5).  Qualified USFS employees from the

Beaverhead-Deerlodge National Forest assisted in fire suppression activities during

this period in Montana and elsewhere in the United States.  *Id.*  Third, an agency-

wide hiring freeze prevented the Beaverhead-Deerlodge National Forest from

filling more than twenty vacant positions for most of 2017.  *Id.* ¶ 9(c).  Finally, the

USFS employee with primary responsibility for undertaking the two analyses and

responding to comments was temporarily assigned to two different key staff

positions during this period in addition to her primary responsibilities.  *Id.* ¶ 9(d).

Notwithstanding these unanticipated challenges, USFS completed the New

Information Review and Determination on December 27, 2017 and the final

supplemental EIS and draft Record of Decision on January 26, 2018.  *Id.* ¶¶ 2, 5;

Bowey Decl. Ex. 1.  USFS provided interested public participants with notice of

the final New Information Review and Determination and posted a copy of the

review on its website.  *Id.* ¶ 3 and Ex. 1.  USFS also informed individuals and

organizations who submitted comments on the draft supplemental EIS of the

availability of the final supplemental EIS and the draft Record of Decision.  Bowey

Decl. ¶ 7.  USFS then published a legal notice in *The Montana Standard*, initiating

the 60-day objection period and 90-day objection review period.  *Id.* ¶ 8; *see also*

36 C.F.R. §§ 219.56(a), 219.57(b).  A final Record of Decision for the

supplemental EIS is anticipated after these periods have run and objections have

been addressed.

### III.   <u>LEGAL STANDARD</u>

Rule 62(c) of the Federal Rules of Civil Procedure provides that, when "an

appeal is pending from an interlocutory or final judgment that . . . denies an

injunction," a court, in its discretion, "may suspend, modify, restore, or grant an

injunction on terms for bond or other terms that secure the opposing party's

rights." Fed. R. Civ. P. Rule 62(c).  In deciding whether to grant an injunction

pending appeal, courts apply the standard used when considering a motion for a

preliminary injunction.  *Tribal Vill. of Akutan v. Hodel*, 859 F.2d 662, 663 (9th Cir.

1988).  Those factors are:

> (1) whether the [injunction] applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent [an injunction]; (3) whether issuance of the [injunction] will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citations omitted).  The party seeking the injunction must demonstrate all four factors.  *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 19-20 (2008).

The Supreme Court has instructed courts not to exercise their equitable powers "loosely or casually" in cases involving environmental claims.  *Aberdeen & Rockfish R.R. Co. v. SCRAP*, 409 U.S. 1207, 1217-18 (1972).  The Ninth Circuit has confirmed that "any potential environmental injury" does not merit an injunction, but instead may be outweighed by other considerations, including the risks to resources caused by an injunction of the challenged action.  *Lands Council v. McNair*, 537 F.3d 981, 1004-05 (9th Cir. 2008) (finding that preventing risks of catastrophic fire, insect infestation, and disease and aiding the struggling local economy and preventing job loss may outweigh alleged harm to individual species); *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475-76 (9th Cir. 2010) (benefits of salvage project, including economic recovery, hazard reduction, and reforestation weighed in favor of project).

Like a preliminary injunction, an injunction pending appeal is "an extraordinary remedy that should be granted sparingly."  *Sierra Forest Legacy v.*

*Fed. Defs.' Resp. in Opp'n*                                                              9

*Rey*, 691 F. Supp. 2d 1204, 1207 (E.D. Cal. 2010) (quotation and citation omitted).

Because the movant is, in essence, requesting that a court grant it the very relief,

pending appeal, that the court just decided it is not entitled to receive, "the burden

of meeting the standard is a heavy one." 11 CHARLES ALAN WRIGHT, *ET AL.*,

FEDERAL PRACTICE AND PROCEDURE § 2904 (3d ed. 2015) (footnote omitted).  Rule

62(c) "does not restore jurisdiction to the district court to adjudicate anew the

merits of the case after either party has invoked its right of appeal and jurisdiction

has passed to an appellate court."  *McClatchy Newspapers v. Cent. Valley*

*Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982).

## IV.   ARGUMENT

### A.   Plaintiffs may not seek an injunction pending appeal absent a ruling that denies the request for injunctive relief in their summary judgment motion.

The Federal Rules of Civil Procedure allow for an injunction pending appeal

only when a district court issues an order or judgment on requested injunctive

relief.  Rule 62 provides that an injunction pending appeal is permissible only

"while an appeal is pending from an interlocutory order that *grants, dissolves, or*

*denies an injunction*. . ."  Fed. R. Civ. P. Rule 62(c) (emphasis added).  In its order

on the cross-motions for summary judgment, the Court did not grant, dissolve, or

deny an injunction.  Instead, the Court indicated that it "deems it appropriate at this

stage to *defer a decision* on whether to enjoin domestic sheep grazing until the

USFS has resolved the deficiencies in its analysis." Order on SJ Mots. 36 (emphasis added).

Because no order or judgment of this Court has granted or denied the injunction that Plaintiffs requested in their motion for summary judgment, Plaintiffs request fails to meet the requirements of Rule 62(c). Plaintiffs' motion is premature and should be denied on this basis.

**B. Plaintiffs have not demonstrated a likelihood of success on the merits.**

Even if the Court were to consider Plaintiffs' request for an injunction pending appeal, the Court should deny the motion because Plaintiffs have not demonstrated that they are likely to succeed on the merits.

Plaintiffs base their request for an injunction pending appeal on the NEPA claim that USFS did not disclose the MOUs as part of the Forest Plan analysis. Pls.' Mot. for Inj. Pending Appeal 4, ECF No. 178 ("Pls.' Mem."). However, this Court ordered an administrative remand for additional environmental analysis regarding the MOUs, and that claim is not on appeal. The only claim that Plaintiffs appealed was this Court's ruling in favor of Federal Defendants on the viability analysis. *See* Mediation Questionnaire, No. 16-35665 (9th Cir.), Dkt. No. 16 ("Gallatin Wildlife and Yellowstone Buffalo Foundation cross-appeal the viability ruling."); Appellants' Opening Br. 1, 12-15, No. 16-35665 (9th Cir.), Dkt. No. 12 (appealing viability ruling). Plaintiffs provide no argument that this Court

should enjoin grazing based on the viability claim.

Because Plaintiffs have not shown that they are likely to prevail on their claim that is on appeal, the Court should deny the present motion. *See e.g., Carlton*, 626 F.3d at 469; *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) ("when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements.") (internal quotations, alterations, and citations omitted); *Native Ecosystems Council v. Marten*, No. CV 13-64-M-BMM, 2017 WL 2457886, at *2 (D. Mont. June 6, 2017) (denying motion for injunction pending appeal because plaintiffs did not show a likelihood of success on the merits).

## C.   <u>Plaintiffs have not demonstrated irreparable injury.</u>

In addition to failing to demonstrate a likelihood of success on the merits of the claim on appeal, Plaintiffs also fail to show they will suffer any irreparable injury in the absence of an injunction pending appeal.  Plaintiffs argue – as they previously argued in their preliminary injunction and summary judgment motions – that domestic sheep grazing is likely to cause irreparable harm to bighorn sheep, grizzly bears, and their members.  Pls.' Mem. 4-8; *see also* Pls.' PI Mot. 31-38; Pls.' SJ Mot. 21-26.   The Court rejected these arguments, and Plaintiffs offer no reason why the Court's analysis and conclusion should be different in 2018.

To succeed on their motion, Plaintiffs must show that irreparable harm is

*likely*, not just possible. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

1131 (9th Cir. 2011) (citing *Winter*, 555 U.S. at 22); *see also Small v. Operative*

*Plasterers' & Cement Masons' Int'l Ass'n Local 200*, 611 F.3d 483, 490-91 (9th

Cir. 2010). Mere "[s]peculative injury does not constitute irreparable injury

sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs.*

*Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted). Plaintiffs

have not their burden under the second *Winter* factor.

1.  <u>Plaintiffs have not shown irreparable harm to bighorn sheep.</u>

With respect to harms to bighorn sheep, Plaintiffs again rely on the extra-

record testimony of Dr. Jim Bailey for his expert opinion that the area where the

domestic sheep allotments are located is "suitable for a large bighorn

population…." Decl. of Jim Bailey ¶ 25, ECF No. 115-1; Pls.' Mem. 6 (citing

ECF No. 4 at 38).[1] At the summary judgment stage, the Court struck the portion of

Dr. Bailey's expert opinion testimony on this same point because it offers "expert

---

[1] Plaintiffs seemingly seek to avoid this Court's order striking Dr. Bailey's expert opinion on this point by citing to an earlier version of the opinion offered at the preliminary injunction stage. Given the exigencies of responding to a preliminary injunction motion, Federal Defendants did not move to strike Dr. Bailey's first expert declaration. However, that declaration is no less objectionable than his second expert declaration, which this Court struck. *Gallatin Wildlife Ass'n v. USFS*, No. 2:15-cv-0027-BU-BMM, 2016 WL 6684197, at *2 (D. Mont. Apr. 7, 2016). Dr. Bailey's first declaration should not be considered on this motion for an injunction pending appeal.

*Fed. Defs.' Resp. in Opp'n*                                          13

opinion and facts and argument that fall outside the record." *Gallatin Wildlife Ass'n*, 2016 WL 6684197, at *2.  There, Plaintiffs claimed Dr. Bailey's expert testimony was needed to establish irreparable harm for purposes of standing, and the Court rejected the argument.  Plaintiffs now offer the same expert testimony to establish irreparable harm for purposes of injunctive relief, and the Court should again reject the argument.  Plaintiffs should not be permitted to establish irreparable harm by asserting an alternative, extra-record version of the facts and expert opinion as to the harms to bighorn sheep.

Plaintiffs have failed to demonstrate that bighorn sheep are likely to experience irreparable harm if grazing proceeds in 2018.  As the Court has previously noted, a distance of between six and seventeen miles separates the bighorn sheep from the Gravelly Mountain allotments.  PI Order 8-9.  There have been no removals of bighorn sheep, die-offs, or known commingling of the two species on the allotments.  *Id.*  Nor have there been any removals, die-offs, or commingling since the Court issued its order almost two years ago.  Waltee Decl. ¶¶ 7, 8.  In fact, the Greenhorn Mountain bighorn sheep herd has met state criteria for the possibility of hunter-harvest; there is a pending proposal before the Montana Fish and Wildlife Commission to initiate hunter-harvest of this herd beginning in the fall of 2018.  *Id.* ¶ 9.  Plaintiffs fail to explain how permitting grazing in 2018 will make the risk of disease transmission more likely when it has

not occurred historically, nor prevented the bighorn herd from growing.

Plaintiffs assert that "[a]t least one bighorn sheep has been found dead in the domestic sheep allotments."  Pls.' Mot. 6-7, (citing Hockett Decl., Ex. 1, ECF No. 178-3 at 6 of 8).  This statement is misleading in several respects.  First, the email exchange submitted by Plaintiffs does not state that the reported sheep was found on an allotment.  Rather, it states only that on August 8, 2013, Steve Primm of Ennis called Craig Fraser, a wildlife biologist with Montana FWP to report a dead bighorn ewe in the vicinity of Black Butte.  Hockett Decl., Ex. 1, ECF No. 178-3 at 6 of 8.  Second, Plaintiffs' interpretation treats the telephone conversation as confirmed mortality, which it is not.  The email exchange states "there was no follow-up in the field."  *Id.*  Mr. Fager avers that due to a staffing vacancy, Montana FWP was unable to confirm with physical proof or investigate the death of a bighorn ewe as is required for species that are rare or that occur at low densities.  Decl. of Craig Fager ¶¶ 8, 10; *see* Decl. of Quentin Kujala ¶ 8 (stating that wildlife reports are "typically treated as 'unconfirmed' until or unless an informed MFWP staff member makes a direct or photo-based observation or if there is a convincing first-person detailed communication between an informed MFWP staff member and the original observer.").  Mr. Fager further avers that Mr. Primm's call was the only report of bighorn sheep, alive or dead, that he had ever received in the vicinity of Black Butte.  Fager Decl. ¶ 12.

*Fed. Defs.' Resp. in Opp'n*                                                                 15

In any event, the reported death of single bighorn ewe in the vicinity of
Black Butte in August of 2013 is not nearly enough to establish that bighorn sheep
will be irreparably harmed by grazing of domestic sheep in 2018.  The cause of
death is unknown and the incident was an isolated one.  Additionally, the event
took place two years before Plaintiffs brought this lawsuit.  Finally, USFS has
already investigated this reported bighorn mortality as part of the New Information
Review and Determination.  Bowey Decl. ¶ 10.

    2.    <u>Plaintiffs have not shown irreparable harm to grizzly bears.</u>

With respect to harm to grizzly bears, Plaintiffs reiterate the arguments they
made in their motion for a preliminary injunction.  In doing so, they rely on
doubtful and unsubstantiated hearsay testimony and inadmissible expert opinion
testimony.  *See* Pls.' Mem. 7-8.

As an initial matter, the amended complaint does not raise any claims with
respect to grizzly bears, *see* ECF No. 73, and Plaintiffs never raised any arguments
about grizzly bears in their summary judgment briefs.  Fed. Defs.' Resp. in Opp'n
to Pls.' Mot. for Summ. J. & Br. in Supp. of Cross-Mot. for Summ. J. 9 n.3, ECF
No. 123.  Plaintiffs' appeal concerns bighorn sheep viability and has nothing to do
with grizzly bears.  The Court thus need not consider Plaintiffs' arguments about
grizzly bears.

When the Court considered these allegations of irreparable harm to grizzly

bears at the preliminary injunction stage, the Court concluded that Plaintiffs failed to explain how domestic sheep grazing in 2015 would cause grizzly bears to suffer irreparable harm by displacing the bears and restricting access to a wildlife corridor given the long history of grazing in the Gravelly landscape.  PI Order 9-10.  Plaintiffs offer no additional grounds as to how domestic sheep grazing in 2018 is likely to cause irreparable harm to grizzly bears, and their claim of irreparable harm to grizzly bears should be rejected on that basis.  Furthermore, since the Court's ruling on the preliminary injunction, the Fish and Wildlife Service has delisted the Greater Yellowstone Ecosystem population of grizzly bears from the federal list of endangered and threatened species because the population has met recovery goals.[2]  82 Fed. Reg. 30,502 (June 30, 2017).

Moreover, all of the evidence Plaintiffs rely upon to demonstrate irreparable harm to grizzly bears is inadmissible.  Plaintiffs cite Dr. David Mattson, who offers "expert opinion" that domestic sheep "pose a significant threat to the recovery and conservation of the Yellowstone Grizzly bear population."  Pls.' Mem 7.  Such expert opinion is outside the administrative record and should not be considered in support of Plaintiffs' challenge under the Administrative Procedure Act in this case.  *Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("the focal point for judicial review

---

[2] To date, five actions have been filed that challenge the delisting decision.  Those cases are consolidated as *Crow Indian Tribe, et al. v. United States*, No. 9:17-CV-0089-M-DLC (D. Mont.).

should be the administrative record already in existence, not some new record made initially in the reviewing court."); *Gallatin Wildlife Ass'n*, 2016 WL 6684197, at *2 ("The Court will not allow a declaration that characterizes the record with new expert opinion.") (citation omitted).

Plaintiffs also rely on the unsubstantiated and inadmissible hearsay testimony of a declarant who claims to have picked up an unidentified man in a car and then proceeded to ask whether the man had ever seen a grizzly bear and the man then "chuckled" and made an otherwise unsupported statement regarding shooting grizzly bears. Pls.' Mem. 8 (citing ECF No. 40 at 8, ¶¶ 6-7).[3] Not only is this statement inadmissible, it does not establish that there are "illegal killing of grizzly bears on the sheep allotments" as Plaintiffs claim. *Id.*

Moreover, the evidence available tends to confirm the Court's 2015 conclusion that Plaintiffs had not demonstrated likely harm to grizzly bears due to domestic sheep grazing. The grizzly bear specialist for the Wildlife Division of Montana FWP, who is involved in all investigations of grizzly bear mortalities, has no knowledge or record of any poached or unresolved grizzly bear mortalities in

---

[3] Plaintiffs claim that this hearsay testimony is "corroborated" by counsel's statement – in a declaration that he filed in support of his application for attorney's fees – that he too heard the statement. Pls.' Mem. 11 (citing ECF No. 158-3 ¶ 14). But the fact that two people claim to have heard the same hearsay does not make it any more reliable or admissible as to the truth of the matter asserted than if only one person heard it.

the Gravelly Mountains within the Beaverhead-Deerlodge National Forest from 2015 to date.  Decl. of Kevin Frey ¶¶ 4-5.  In sum, Plaintiffs have not shown that domestic sheep grazing in 2018 is likely to cause grizzly bears to suffer irreparable harm.

       3.    <u>Plaintiffs have not shown irreparable harm to their members.</u>

The Ninth Circuit has rejected on several occasions, and again in *Cottrell*, the premise that "'any potential environmental injury' warrants an injunction." *Cottrell*, 632 F.3d at 1135 (citing *Lands Council*, 537 F.3d at 1004).  Plaintiffs' allegations as to their members' unspecified recreational and conservation interests do not show irreparable harm of any kind.

Plaintiffs argue that domestic sheep grazing will harm their members' "conservation and recreation interests."  Pls.' Mem. 5.  Plaintiffs do not state how grazing will impair those interests, but instead allege that their members "cannot use and enjoy over 50,000 acres…" of approximately 3.35 million acres of Beaverhead-Deerlodge National Forest lands.  Plaintiffs claim that because one of their members has passed away and another has turned 90 years old, grazing will cause irreparable harm.  *Id.* at 4.  Contrary to Plaintiffs' statements, nothing is preventing Plaintiffs' members from experiencing their recreational and conservation interests.  With or without domestic grazing, Plaintiffs' members are free to visit and recreate on the Forest, and indeed to view bighorn sheep on the

Forest.  Plaintiffs have not shown that grazing in 2018 will impair their aesthetic and recreational interests by causing any new harm to the landscape that has not already occurred over the past 150 years.

Plaintiffs rely on *Cottrell* for the proposition that unspecified recreational and conservation interests are sufficient for showing irreparable harm.  *See* Pls.' Mem. 8-9 (citing *Cottrell*, 632 F.3d at 1138).  *Cottrell* is distinguishable.  In Cottrell, the plaintiffs sought to prevent trees from being removed from a forest. Plaintiffs here seek to prevent a use that has been taking place for more than 150 years.  Where a plaintiff cannot show a likelihood of actual harm to the species, courts have refused to issue injunctions. *See e.g. Native Ecosystems Council & All. for the Wild Rockies v USFS ex rel. Davey*, No. 11-cv-00212-CWD, 2011 WL 4015662, at *7 (D. Idaho Sept. 9, 2011) (finding that plaintiffs "cannot bring an action alleging harm to a particular threatened species and then argue the presence of irreparable harm untethered to the alleged harm to that species") (footnote omitted).  The same reasoning applies here.

Plaintiffs have failed to demonstrate the likelihood of irreparable harm absent an injunction.  The Court may deny the motion on this basis alone.  *All. for the Wild Rockies v. Krueger*, 35 F. Supp.3d 1259, 1270 (D. Mont. 2014) (citing *Cottrell*, 632 F.3d at 1135).

**D.**     **The public interest and balance of harms do not favor an injunction.**

It is well-settled that a court may not impose an injunction where to do so is contrary to the public interest, even if the movant is likely to suffer irreparable injury.  *See Winter*, 555 U.S. at 22-23 (holding that even though plaintiffs showed a "near certainty" of irreparable injury to marine mammals from the Navy's use of mid-frequency active sonar, that harm was outweighed by the public interest in facilitating effective naval training exercises); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982) ("[W]here an injunction is asked which will adversely affect a public interest . . . the court may in the public interest withhold relief . . . though the postponement may be burdensome to the plaintiff") (quoting *Yakus v. United States*, 321 U.S. 414, 440 (1944)).  Where a plaintiff cannot make a strong showing with respect to the likelihood of success on the merits, he must show that the public interest and balancing of equities "tips sharply" in his favor.  *Cottrell*, 632 F.3d at 1135 (quoting *Lands Council*, 537 F.3d at 987).

The public interest and the balance of equities support allowing grazing to continue.  Under USFS's multiple use mandate, the agency must provide for a balance among multiple uses – including range for livestock.  16 U.S.C. § 1604(e)(1) (requiring forest plans to "include coordination of outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness.").  The Beaverhead-Deerlodge National Forest has approximately 802,000 acres suitable for livestock

grazing.  USFS003382.  The seven allotments at issue here, which comprise approximately 55,000 of these acres, are the only domestic sheep allotments on the Forest.  USFS007803, 7816.  "[L]ivestock grazing…remains an integral base activity in several county economies."  USFS003600.  In Madison County the grazing industry contributes approximately 15.7% of the jobs in the regional economy.  USFS003605.  If grazing is enjoined in 2018, the Forest Service will lose approximately $9,000 in grazing fees.  Bowey Decl. ¶ 11.  "Economic harm may indeed be a factor in considering the balance of equitable interests."  *Carlton*, 626 F.3d at 475 (citation omitted).

It is not only those who participate in livestock grazing who benefit.  As the wildlife bureau coordinator for Montana FWP explains, his agency "relies heavily on working relationships with private landowners and managers to fulfill the agency's mission."  Kujala Decl. ¶ 9.  One example of those working relationships is memorialized in the 2016 modified MOU, which in his view "has successfully managed bighorn sheep in the area since the original release [of bighorn sheep] in 2003."  *Id.* ¶ 10.  In his view, if grazing were to be enjoined, "the working relationships between MFWP and agricultural or livestock producers as well as their representative industry groups and legislators across the state [will] suffer as landowners lose both trust and confidence in collaborative efforts with the agency."  *Id.*

Plaintiffs rely on *Cottrell* for the proposition that the "District of Montana views an injunction pending appeal as an appropriate 'middle ground' in cases where it acknowledges the balance [of equities] is a 'close call.'" Pls.' Mem. 8 (citing *All. for the Wild Rockies*, 35 F. Supp.3d at 1270). But that misstates what the *Cottrell* court stated. In that case, in the course of denying plaintiffs' request for an injunction pending appeal, the court observed, in dicta, that the very existence of Rule 62(c) "indicates that a middle ground exists in instances where a district court rules in favor of the defendants, yet acknowledges the fact that its ruling was a close call, or that the law upon which its ruling rests is unsettled or opaque." 35 F. Supp. 3d at 1270. The court there was not, as Plaintiffs' suggest, addressing the balance of equities or public interest analysis of a motion seeking an injunction, but instead was addressing an instance in which a court acknowledges that its ruling was a close call. It instead warned that if "the Court adopted a broader application of Rule 62(c), the exception would swallow the rule and injunctions would be issued as a matter of course." *Id.* Because the plaintiffs failed to articulate serious questions going to the merits, that was fatal to their motion. *Id.*

While it is true that this Court expressed its view that the balance of equities and the public interest raise "difficult issues," the Court did not identify difficult issues in finding that Plaintiffs did not show likely success on the merits or likely

irreparable harm.  Plaintiffs' failure to identify serious questions going to the merits and failure to show irreparable harm should be fatal to their motion here.

Plaintiffs have failed to demonstrate that the balance of equities tips in their favor or that the public interest would be served by enjoining grazing.  The Court should deny Plaintiffs' motion for an injunction pending appeal.

**E.      Plaintiffs should post a bond.**

Rule 62(c) allows the Court to "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  Fed. R. Civ. P. 62(c).  Plaintiffs have provided no evidence of their inability to post a bond.  If the Court finds that Plaintiffs have met their heavy burden for an injunction pending appeal, it should require Plaintiffs to post a security in an amount appropriate to pay the costs and damages, should grazing be wrongfully enjoined.

## V.      CONCLUSION

This is Plaintiffs' fifth request to enjoin grazing on Forest Service allotments in the Gravelly Mountains.  As explained above, Plaintiffs have not presented any new arguments or information as to why the Court should now enjoin grazing.  The Court should deny Plaintiffs' motion for an injunction pending appeal.

Respectfully submitted on this 1st day of February, 2018.

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*/s/  John P. Tustin*
JOHN P. TUSTIN, Trial Attorney
SEAN C. DUFFY, Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Phone:    (202) 305-3022 (Tustin)
              (202) 305-0445 (Duffy)
Fax:        (202) 305-0506
john.tustin@usdoj.gov
sean.c.duffy@usdoj.gov

KURT G. ALME
United States Attorney

*Attorneys for Federal Defendants*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief is 5,766 words as counted using the word count feature of Microsoft Word, excluding the caption, table of contents, table of authorities, signature blocks, certificate of compliance, and certificate of service.

> /s/  John P. Tustin
> JOHN P. TUSTIN
> *Attorney for Federal Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 1, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Stuart Wilcox
swilcox@wildearthguardians.org
John Meyer
jmeyer@cottonwoodlaw.org
Sarah K. McMillan
smcmillan@wildearthguardians.org

*Attorneys for Plaintiffs*

Dana L. Hupp
dhupp@wordenthane.com

*Attorney for Intervenor Defendants
Helle Livestock and Rebish/ Konen
Livestock Limited Partnership*

James E. Brown
thunderdomelaw@gmail.com

*Attorney for Intervenor Defendants
Montana Wool Growers Association
and the American Sheep Industry*

Hertha L. Lund
Julia J. Brown
Alison P. Garab
Lund@Lund-Law.com

*Attorneys for Amicus Curiae Montana
Farm Bureau Federation*

William P. Driscoll
wpd@franzdriscoll.com
Caroline Lobdell
clobdell@wrlegal.org

*Attorneys for Amicus Curiae Montana
Stockgrowers Association, et al.*

*/s/  John P. Tustin*
JOHN P. TUSTIN
*Attorney for Federal Defendants*