# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| GALLATIN WILDLIFE ASSOCIATION, YELLOWSTONE BUFFALO FOUNDATION,<br><br>  Plaintiff,<br><br>v.<br><br>UNITED STATES FOREST SERVICE; *et al.*,<br><br>  Defendants,<br><br>  and<br><br>HELLE LIVESTOCK, a partnership; and REBISH/KONEN LIVESTOCK LIMITED PARTNERSHIP,<br><br>  Defendant-Intervenors,<br><br>  and<br><br>MONTANA WOOL GROWERS ASSOCIATION and the AMERICAN SHEEP INDUSTRY,<br><br>  Defendant-Intervenors | CV-15-27-BU-BMM<br><br><br><br>**ORDER** |

1

Before the Court is Plaintiff Gallatin Wildlife Association's motion for an injunction pending appeal. (Doc. 178.) The Court held a hearing on this motion on March 7, 2018. (Doc. 200.)

## PROCEDURAL HISTORY

Plaintiffs Gallatin Wildlife Association ("Gallatin"), WildEarth Guardians, Western Watersheds Project, and Yellowstone Buffalo Foundation filed their complaint on June 11, 2015. Plaintiffs challenged the Revised Forest Plan, Allotment Management Plans, and Annual Operating Instructions for the domestic sheep allotments in the Gravelly Mountains on the Beaverhead-Deerlodge National Forest ("BDNF"). (Doc. 73 at 1.) Plaintiffs alleged that the United States Forest Service ("USFS"), Leanne Marten in her official capacity as Regional Forester of the USFS, and the United States Fish and Wildlife Service ("USFWS") (collectively "Federal Defendants") violated the National Environmental Policy Act ("NEPA"), the National Forest Management Act ("NFMA"), and the Administrative Procedures Act ("APA"), when they authorized the Revised Forest Plan, Allotment Management Plans, and Annual Operating Instructions. (Doc. 73 at 3, 11-13.)

The Court granted leave to intervene as Defendant-Intervenors to Helle Livestock and Rebish/Konen Livestock Limited Partnership ("Permitees") on June

3, 2015. (Doc. 28.) The Court likewise granted leave to intervene as Defendant-Intervenors to Montana Wool Growers on August 31, 2015. (Doc. 68.)

Gallatin moved the Court for a preliminary injunction ("Injunction I") against the USFS on June 15, 2015. (Doc. 3.) Gallatin sought to enjoin domestic sheep grazing on the Cottonwood and Fossil-Hellroaring allotments. These allotments constitute two of the seven allotments subject to this action. The Court held a hearing on the motion on July 8, 2015. (Doc. 39.) The Court denied Gallatin's motion for Injunction I on July 10, 2015. (Doc. 43.)

Gallatin appealed the Court's denial of the preliminary injunction to the Ninth Circuit ("Appeal I") and requested an emergency injunction pending appeal ("Injunction II") on July 13, 2015. (Doc. 44.) The Ninth Circuit denied Gallatin's emergency motion for Injunction II on July 17, 2015. (Doc. 49.)

Gallatin also moved this Court for an injunction pending its appeal of the denial of the preliminary injunction on July 16, 2015 ("Injunction III"). (Doc. 47.) The Court denied the motion for Injunction III on August 4, 2015. (Doc. 61.) Gallatin moved to dismiss voluntarily Appeal I on July 30, 2015. (Doc. 59 at 1.) The Ninth Circuit granted the motion to dismiss on July 31, 2015. (Doc. 59.)

Plaintiffs moved for summary judgment on February 25, 2016. (Doc. 116.) Plaintiffs sought judgment that the USFS had violated NEPA in three ways.

Plaintiffs sought, in the alternative, permanent injunctive relief ("Injunction IV") from domestic sheep grazing and trailing in the BDNF. *Id.* at 3.

The Court granted summary judgment on two of Gallatin's three claims. (Doc. 148.) The Court determined that the USFS had not acted arbitrarily and capriciously in using "coarse filter" methodology in its Forest Plan NEPA analysis. (Doc. 148 at 15.) The Court determined that the USFS had failed to comply with NEPA, however, by failing to disclose and analyze the impacts of two Memoranda of Understanding that Federal Defendants had entered with the Permittees to allow domestic sheep to graze in the BDNF. (Doc. 148 at 26.) The Court further concluded that the USFS had violated NEPA when it failed to evaluate whether new information warranted supplemental NEPA analyses of allotment management plans. (Doc. 148 at 34-35.)

The Court denied Plaintiffs' request for Injunction IV. (Doc. 148 at 36.) The Court instead ordered the USFS to complete expedited environmental review to resolve the deficiencies in the environmental analysis. The Court reasoned that the supplemental environmental review process would require the USFS to address the conflict between domestic sheep grazing and the reintroduction of bighorn sheep. (Doc. 148 at 37.)

The USFS appealed the summary judgment order on August 15, 2016 ("Appeal II"). (Doc. 153.) The USFS moved to dismiss voluntarily Appeal II on

November 23, 2016. (Doc. 157 at 1.) The Ninth Circuit granted that motion on November 30, 2016. (Doc. 157.)

Gallatin appealed the summary judgment order on August 18, 2018 ("Appeal III"). (Doc. 155.) The Ninth Circuit released Appeal III from mediation on December 13, 2016, and set a briefing schedule. *Gallatin Wildlife Association, et. al., v. USFS, et. al,* No. 16-35665, Doc. 11 (December 13, 2016).

Gallatin filed its opening brief on appeal on February 15, 2017. *Gallatin Wildlife Association, et. al., v. USFS, et. al,* No. 16-35665, Doc. 12 (February 15, 2017). Gallatin argues that the Court erred in upholding the USFS's selection of "coarse filter" methodology. *Id*. at 21. Gallatin further argues that the Court abused its discretion in denying its request for Injunction IV. *Id*. at 22.

The parties returned to mediation. The Ninth Circuit again released Appeal III from mediation on December 27, 2017. *Gallatin Wildlife Association, et. al., v. USFS, et. al,* No. 16-35665, Doc. 34 (December 27, 2017). The USFS filed its answer brief on February 21, 2018. *Gallatin Wildlife Association, et. al., v. USFS, et. al,* No. 16-35665, Doc. 35 (December 13, 2016). Appeal III remains pending.

The Court on January 17, 2018, ordered the parties to file a joint status report by February 9, 2018. (Doc. 177.) Gallatin filed the instant motion for injunction pending appeal ("Injunction V") on January 18, 2018. (Doc. 178.) Plaintiffs WildEarth Guardians and Western Watersheds Project notified the Court

on January 31, 2018, that they did not participate in the appeal and are not parties to this stage of the litigation. (Doc. 182.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 62(c) provides that a court may "suspend, modify, restore, or grant an injunction" when "an appeal is pending from an interlocutory or final judgment" which "denies an injunction." A court must apply the same standard to a request for an injunction pending appeal that it applies when considering a motion for a preliminary injunction. *Alliance for the Wild Rockies v. Kruger*, 35 F.Supp.3d 1259, 1270 (D. Mont. 2014).

An injunction represents an extraordinary remedy that a court should never award as a matter of right. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). A party seeking a preliminary injunction must establish: (1) that he is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction serves the public interest. *Winter*, 555 U.S. at 20. The Court "need not consider" the latter three elements where the moving party has failed to demonstrate likelihood of success on the merits. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

Where a party fails to demonstrate likelihood of success on the merits, a preliminary injunction may yet be appropriate where: 1) a plaintiff raises "serious questions going to the merits;" 2) "the balance of hardships tips sharply in the Plaintiff's favor;" and 3) Plaintiffs "satisfy the other *Winter* factors." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (citations omitted).

## DISCUSSION

Gallatin argues that the balance of harms has shifted in its favor since this Court's denial of Injunction IV. (Doc. 178-1 at 3.) Gallatin bases its motion for injunction pending appeal on the NEPA claim that USFS did not disclose permittee MOUs as a part of the Forest Plan Analysis (hereafter the "MOU NEPA claim"). *Id*. at 5. Gallatin already has prevailed on this claim and argues, therefore, that this success meets the threshold question of the *Winter* analysis: likelihood of success on the merits. *Id*. Neither party has raised the MOU NEPA claim on appeal. Federal Defendants argue that Gallatin's failure to demonstrate a likelihood of success on the merits, or raise serious questions on the merits of its appeal, defeats its motion for injunction pending appeal. (Doc. 183 at 15-16.)

### I. Gallatin's Motion for Injunction Pending Appeal Constitutes a Motion for Reconsideration

Gallatin cites this District's decision in *Kruger* in support of its motion. Gallatin relies on *Kruger* for the proposition that an injunction would be "appropriate" here because this Court "ruled in favor of the defendants, yet acknowledge[d] the fact that its ruling was a close call." 35 F.Supp.3d at 1270; (Doc. 43 at 3).

*Kruger* concerned alleged violations of the Endangered Species Act ("ESA"), NFMA, and NEPA by the Cabin Gulch Project on the Helena National Forest based on potential harm to lynx, grizzly bears, and elk. *Kruger*, 35 F.Supp.3d at 1262-63. The Court granted summary judgment to the plaintiffs on an ESA claim involving lynx. *Id*. at 1262. The Court ruled in favor of the defendants on all other claims, however, including those pertaining to grizzly bears under the ESA, and those pertaining to elk under NEPA and NFMA. *Id*. at 1263.

The Court enjoined the Project. *Id*. The Court ordered defendants to remedy the ESA deficiencies. *Id*. The Court dissolved the injunction after defendants had remedied the deficiencies. *Id*. Following dissolution of the injunction, the plaintiffs appealed the dissolution order and the Court's adverse rulings on summary judgment. *Id*. The plaintiffs moved for an injunction pending appeal based on their elk and grizzly bear claims. *Id*.

*Kruger* differs from this case in one notable regard. The plaintiffs in *Kruger* based their grizzly bear claims on the ESA. A modified, less-demanding standard

8

applies to ESA claims. *Kruger*, 35 F.Supp.3d at 1265. In ESA claims, "the balance of the hardships always tips sharply in favor of the endangered or threatened species." *Id*. at 1266 (citations omitted). The Court applied this test to the grizzly bear claims. *Id*. at 1270. The Court applied the "complete and more exacting *Winter* test" to the elk claims, as elk are not an ESA-listed species. *Id*. at 1268.

The Court discussed the Federal Rule of Civil Procedure 62(c) standard under both the "serious question" and "likelihood of success on the merits" standards. *Kruger*, 35 F.Supp.3d at 1270. The *Kruger* court noted that an injunction pending appeal could provide a "middle ground" where "a district court rules in favor of the defendants, yet acknowledges the fact that its ruling was a close call, or that the law upon which its ruling rests is unsettled or opaque." *Id*.

The *Kruger* plaintiffs failed ultimately to secure a preliminary injunction. *Id*. The grizzly bear claim raised a presumption that the balance of the hardships tipped in favor of the species under the ESA. The plaintiffs still failed, however, to "articulate serious questions going to the merits." *Id*. Plaintiffs failed further to "demonstrate either likelihood of success of the merits or serious questions on the merits" on the elk claim. *Id*. at 1271.

*Kruger* fails to support Gallatin's assertion that it may rely on a claim not on appeal to satisfy the threshold showing required by *Winter*. The *Kruger* "close call" language on which Gallatin relies goes directly to the "likelihood of success

on the merits" or "serious question" requirement where a party moving for an injunction received an adverse ruling based on uncertainties in the law.

Gallatin's claim, by contrast, does not rely on a "close call" that Gallatin lost. Gallatin instead asks this Court to determine that interim developments should change the Court's ruling on the previously denied preliminary injunction. Gallatin has cited no authority, and the Court has found none, to support the novel claim that success on a claim not appealed can establish a likelihood of success on the merits or raise serious questions going to the merits to satisfy the standard for an injunction pending appeal.

Gallatin has failed to demonstrate likelihood of success on the merits, or to raise serious questions going to the merits, by relying on a claim on which it already has prevailed. Gallatin instead asks this Court, in effect, to reconsider its ruling to deny Injunction IV. The Court declines to reconsider its ruling given Gallatin's pending appeal of the denial of Injunction IV and of the Court's ruling on the "coarse filter" methodology.

## II. The Balance of Equities Does Not Favor an Injunction Pending Appeal

Gallatin's failure to show likelihood of success on the merits relieves the Court of the need to proceed further with the *Winter* analysis. *Garcia*, 786 F.3d at 740. The Court will discuss briefly Gallatin's balance of equities argument for the sake of completeness. The Court has denied three previous requests for injunctive

relief. (Docs. 43; 61; 148 at 36.) Gallatin's motion for injunction pending appeal would fail even if Gallatin had established a likelihood of success on the merits.

### A. Irreparable Harm

To satisfy the "irreparable harm" prong of *Winter*, Gallatin must show that irreparable harm is not just possible, but likely to occur. *Cottrell*, 632 F.3d at 1131 (citing *Winter*, 55 U.S. at 22).

#### i. Bighorn Sheep

Gallatin asserts that bighorn sheep will suffer irreparable harm without an injunction pending appeal. In support, Gallatin claims a dead bighorn sheep has been found "on one of the domestic sheep allotments." (Doc. 178-1 at 8.) Craig Fager, a Biologist for Montana Fish, Wildlife, and Parks ("FWP") confirmed by sworn declaration that Fager received a call from Steve Primm of Ennis, Montana on August 8, 2013. (Doc. 186 at 2.) Fager declares that Primm reported a dead bighorn ewe "in the vicinity of Black Butte in the Gravelly Mountains." *Id*. Fager further indicates that the Dillon field office recorded the mortality electronically and forwarded the information to the Region 3 Wildlife Manager. *Id*.

FWP never confirmed the bighorn sheep fatality. FWP treats wildlife reports as "unconfirmed" until or unless FWP staff observes a fatality directly or in a

photograph, or receives a first-person detailed communication from a firsthand observer. (Doc. 188 at 2.) Fager cites a vacancy in the position normally tasked with confirming a reported bighorn mortality as the reason this investigation did not occur. (Doc. 186 at 2.)

The report of the dead bighorn sheep occurred nearly two years before the filing of Gallatin's complaint. Gallatin has raised no confirmed or unconfirmed bighorn sheep fatalities in the intervening five years. The USFS represented at oral argument that the supplemental EIS would account for the dead bighorn ewe. The unconfirmed report of one bighorn fatality in 2013 fails to demonstrate a likelihood of irreparable harm to bighorn sheep that would justify imposition of an injunction pending appeal.

### ii. Grizzly Bears

Gallatin next contends that grizzly bears likely would suffer irreparable harm based on an affidavit reporting claims of illegal grizzly bear killing and an expert declaration regarding elevated levels of grizzly bear mortality associated with domestic sheep operations. (Doc. 178-1 at 8.) Both the declaration regarding grizzly bear mortality (Doc. 36) and the declaration alleging illegal killing of grizzly bears on sheep allotments (Doc. 40) were before this Court at the time the Court denied Injunctions I, III, and IV.

The Court's July 27, 2015, memorandum explained the 150-year history of domestic sheep grazing in the Gravelly Mountains. (Doc. 56 at 9-10.) In the context of that history, the same expert declaration upon which Gallatin relies here fails to demonstrate that irreparable harm would come to grizzly bears as a result domestic sheep grazing during the 2018 season.

The declaration regarding illegal grizzly bear killing relates a story about an encounter with an unidentified person who was walking down a rural road in the fall of 2012. (Doc. 40 at 5.) The declarant gave the unidentified person a ride to town. *Id*. The unidentified person claimed to work for a Permittee. *Id*. When the declarant asked the unidentified third party about grizzly bears in the Gravelly mountains, the third party related that "they 'shoot, shovel, and shut up.'" *Id*.

In response, the USFS has submitted the declaration of Kevin Frey, a Grizzly Bear Specialist for Montana Fish Wildlife and Parks. (Doc. 187.) Frey is involved in all investigations of grizzly bear mortalities. *Id*. at 1. Frey attests that he has no knowledge or record of any poached or unresolved grizzly bear mortalities in the Gravelly Mountains between 2015 and January 26, 2018. *Id*. at 2.

The declaration Gallatin relies on constitutes inadmissible hearsay. The Frey declaration demonstrates that the hearsay regarding grizzly bear killing remains unsubstantiated. Gallatin's declaration fails to demonstrate a likelihood of irreparable harm to grizzly bears.

### iii. Gallatin's Members

Gallatin asserts that its members will suffer irreparable harm in the absence of an injunction pending appeal. (Doc. 178-1 at 5.) Gallatin bases this argument on the conservation and recreation interests of its members, combined with the advanced age of one member and the recent death of another. *Id*. at 5-6. Gallatin's members attest that the presence of domestic sheep harms their aesthetic and recreational interests. (Docs. 178-3 at 2-3; 178-2 at 2; 178-4 at 3.) These members attest the unsightly appearance of the sheep, the loud and threatening sheep dogs, and the fact that the presence of domestic sheep impacts the declarants' ability to view wildlife in the area. *Id*.

Gallatin relies upon *Cottrell* to demonstrate the likelihood of irreparable harm to its members. (Doc. 178-1 at 6.) The Ninth Circuit in *Cottrell* reversed the district court's denial of a preliminary injunction against a timber salvage sale. 632 F.3d at 1128-29. The Court determined, in part, that the plaintiffs had shown a likelihood of irreparable harm because the timber salvage sale and resultant logging would prevent plaintiffs' members from using 1,652 acres of the forest in their undisturbed state. *Id*. at 1135. Gallatin similarly claims that its members "cannot use and enjoy over 50,000 acres of the Beaverhead Deerlodge National Forest." (Doc. 178-1 at 6.)

Two factors distinguish this case from *Cottrell*. First, the presence of domestic sheep and sheep dogs does not prevent Gallatin's members from using the area in question. Second, in *Cottrell*, the Ninth Circuit considered the ongoing and imminent removal of trees in response to a wildfire. 632 F.3d at 1129. Gallatin challenges grazing practices that have been ongoing for the last 150 years. As discussed in this Court's July 27, 2015, memorandum, Gallatin has raised nothing about the grazing that will change in 2018 to demonstrate a likelihood of new, irreparable harm that would warrant injunctive relief. (*See* Doc. 56 at 9.)

Gallatin further has cited no authority, and the Court has found none, that suggests that the age of its members renders sufficient an otherwise insufficient showing of a likelihood of irreparable harm. In fact, domestic sheep have grazed in the Gravelly Mountains over the entire life of Gallatin's 90-year-old member. In the context of the history of the Gravelly Mountains, Gallatin has failed to demonstrate a likelihood of irreparable harm to justify an injunction pending appeal.

### B. Balance of Equities and Public Interest

Gallatin cites this Court's observation that the balance of equities and public interest inquiries "present[ed] questions that [were] to[o] close to resolve" at the time this Court denied Injunction I. (Doc. 43 at 3.) This Court determined at that

time, however, that Gallatin had also failed to demonstrate likelihood of success on the merits or a likelihood of irreparable harm. *Id*.

Gallatin argues that the balance of equities and public interest now "tips sharply" in its favor. (Doc. 178-1 at 12.) As discussed above, Gallatin again has failed to demonstrate likelihood of success on the merits, raise serious questions going to the merits, or demonstrate a likelihood of irreparable harm. In order to secure an injunction, a plaintiff must satisfy all four *Winter* prongs. *Cottrell*, 632 F.3d at 1135. Thus, even if Gallatin could demonstrate that the balance of equities and public interest now "tips sharply" in its favor, that showing alone would not be sufficient to secure an injunction pending appeal.

Gallatin has not demonstrated, however, that the balance of equities and public interest "tip sharply" in its favor. Gallatin largely relies upon its claims regarding illegal grizzly bear killing, and the presence of sheep dogs deterring recreation. These claims prove insufficient to demonstrate irreparable harm. They are similarly unpersuasive to demonstrate that issuing an injunction "sharply" would favor the public interest. Further, with regard to the grizzly bear declaration, this information is not new, and cannot now "tip" the balance of harms in Gallatin's favor.

## CONCLUSION AND ORDER

Gallatin's reliance on a claim not on appeal fails to demonstrate a likelihood of success on the merits, or raise serious questions going to the merits, warranting an injunction pending appeal. Even if Gallatin's success on the MOU NEPA claim sufficiently met the first prong of the *Winter* test, Gallatin has failed to demonstrate a likelihood of irreparable harm to wildlife or its members, or that the balance of equities and the public interest favor an injunction pending appeal.

Accordingly, for the reasons set forth in the above Order, Gallatin's Motion for Injunction Pending Appeal (Doc. 178) is **DENIED**.

DATED this 16th day of April, 2018.

*/s/ Brian Morris*

Brian Morris
United States District Court Judge